Carol BARAD, Appellant,

v.

JEFFERSON COUNTY, Iowa and Michael Bruce Bobes, and State Automobile and Casualty Underwriters, a Reciprocal Insurance Company, Appellee.

Gary CAMERON, Administrator of the Estate of Jeanne Rochford, Deceased, Appellant,

v.

JEFFERSON COUNTY, Iowa, and Michael Bruce Bobes, and State Automobile and Casualty Underwriters, a Reciprocal Insurance Company, Appellee.

No. 53630.

Supreme Court of Iowa.

June 23, 1970.

Lawyer, Lawyer & Ray, Des Moines, for appellant Carol Barad.

Hawkins, Hedberg & Ward, Des Moines, for appellant Gary Cameron, Administrator.

James W. Crawford, Cedar Rapids, and Gene V. Kellenberger, Cedar Rapids, for appellees Jefferson County, Iowa and State Automobile and Casualty Underwriters, A Reciprocal Insurance Co.

BECKER, Justice.

This is a consolidated appeal. The lawsuits involved were instituted by plaintiff Carol Barad for personal injuries and by the administrator of the estate of Jeanne Rochford for wrongful death growing out of the same automobile accident. The interests of the parties are identical. They will be referred to as plaintiffs.

Plaintiffs' claims against Jefferson County are based on alleged faulty construction and maintenance of a county bridge and against State Automobile and Casualty Underwriters as liability insurer of the County. The claim against defendant Michael Bobes, driver of the car that struck plaintiffs, is not affected by this appeal.

Defendant-County filed motion to dismiss which raised the defense of governmental immunity. Defendant-Insurance Company filed motion to dismiss on grounds the pleadings show no judgment has been obtained against its insured and the insurance policy is not a third-party beneficiary contract as alleged by plaintiffs. While these matters are alleged to affirmatively appear on the face of the petition, certain evidence was taken by agreement of counsel at the hearing on motions to dismiss. This evidence concerned itself with the insurance policy, riders thereto and actions taken in connection therewith. The court sustained the motions to dismiss. Plaintiffs appeal. We affirm.

I. On November 5, 1967, plaintiffs were passengers in an automobile which attempted to cross a county bridge southeast of Fairfield, Iowa, in Jefferson County. The bridge collapsed dropping the car into the creekbed. Plaintiffs were not seriously injured but shortly thereafter a second car, driven by Michael Bobes, also went through the collapsed bridge and struck plaintiffs.

Plaintiffs' well pleaded averments of negligence against the County are taken as true for the purpose of review of ruling on motion to dismiss. But conclusions not supported by pleaded ultimate facts are not admitted. Postal Finance Co. v. Langton, (Iowa, 1969) 166 N.W.2d 806. Hence for the purposes of this appeal we assume defendant-county was negligent in its construction and maintenance of the bridge.

II. Defendant-County relies entirely on its governmental immunity. Prior to January 1, 1968, the enacted effective date of chapter 405, Acts of the 62nd General Assembly of Iowa,[1] counties were immune from suit for negligent construction, erection and maintenance of county bridges. This immunity was predicated on the general principles of governmental immunity long recognized by this court. Post v. Davis County, 196 Iowa 183, 191 N.W. 129, 194 N.W. 245.

The oft-challenged principle of governmental immunity withstood all attacks and

---

1. Now chapter 613A, Iowa Code Annotated, not yet in our official Code.

remains a guiding principle of the common law of this state. This court has consistently held such changes as may be needed in this public policy must be made by the legislature, not the courts. Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 127 N.W.2d 606; Coughlon v. Iowa High School Athletic Assn., 260 Iowa 702, 150 N.W.2d 660. Since those two cases were decided the legislature acted in this area by passing two statutes which mod'fy the governmental immunity doctrine to the degree set out in the statutes.

The Iowa Tort Claims Act, chapter 25A, Code, 1966, enacted by the 61st General Assembly in 1965 allows claims against the State of Iowa but not against its political subdivisions, such as counties, school boards, municipalities and the like. Graham v. Worthington, 259 Iowa 845, 146 N. W.2d 626.

Chapter 405, Acts of the 62nd General Assembly, noted supra, was adopted July 27, 1967 allows claims against named governmental subdivisions under certain stated conditions. Larsen v. Pottawattamie County, (Iowa, 1970) 173 N.W.2d 579.

■ III. With this legal history in mind we consider plaintiffs' first point. They urge us to overrule Post v. Davis County, supra, because it is judge-made law which should not be allowed to stand. The same argument was made in Boyer v. Iowa High School Athletic Assn., supra, and rejected by a majority of the court.

Because of the new legislation plaintiffs feel such overruling action would affect only this case. We cannot agree. Both new legislative enactments are predicated upon the continued existence of common-law governmental immunity. Any deviation from that principle would seriously affect all future interpretations of the new legislation. Stated otherwise governmental immunity has been abrogated by the legislature only to the extent and under the conditions set forth in the statute. Hubbard v. State, (Iowa, 1969) 163 N.W.2d

904. To disregard the initial basic principle would be to undermine the new legislation. Such action would affect more than this case.

We therefore conclude the common-law governmental immunity doctrine applied to Jefferson County on November 5, 1967.

■ IV. Plaintiffs contend chapter 405, Acts of the 62nd General Assembly, is a remedial statute which operates retrospectively as well as prospectively. This argument is not material here. The plain mandate of section 11 of the statute is: "This Act shall have no application to any occurrence or injury claim or action arising prior to its effective date."

The question of retrospectivity is one of legislative intent. Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 149 N.W. 2d 789. Where the legislature has clearly expressed its intent we do not resort to rules of statutory construction.

■ V. Plaintiffs next contend the effective date of the statute is July 26, 1967, the date of publication. The Act provides: "This Act, being deemed of immediate importance, shall be in full force and effect on January 1, 1968 after its passage and publication in the Clinton Herald, a newspaper published at Clinton, Iowa and in The Cedar Rapids Gazette, a newspaper published at Cedar Rapids, Iowa."

Last publication was July 26, 1967.

Article III, section 26 of the Iowa Constitution provides:

"No law of the General Assembly, passed at a regular session, of a public nature, shall take effect until the first day of July next after the passage thereof. Laws passed at a special session, shall take effect ninety days after the adjournment of the General Assembly by which they were passed. If the General Assembly shall deem any law of immediate importance, they may provide that the same shall take effect by publication in

newspapers in the State. As amended Nov. 8, 1966."

The legislative bill *becomes law* when it passes both houses and is signed by the Governor. Iowa Constitution, Article 3, section 16. If no publication was provided by the law which was approved by the Governor on July 20, 1967, it would not have become *effective* until July 1, 1968. With publication the effective date may be advanced. Normally when publication is provided the effective date is the day after publication. Section 3.10, Iowa Code, 1966.

Plaintiffs argue the Constitution limits the advancement to the date of publication, i.e., no interim date may be chosen by the legislature. They would read the section to say the legislature may provide the law shall take effect *on publication*. But the words used are *"by publication"*. New section 26 of the Iowa Constitution as amended does not prevent the legislature from giving its citizens and the government time to prepare for a major change in the law. This is what the legislature did in chapter 405. In doing so it followed a pattern used in the enactment of the Uniform Probate Code, chapter 633, Code, 1966, (effective date delayed from July 1963 to January 1, 1964); the Uniform Commercial Code, chapter 554, (passed April 22, 1965, normal effective date July 4, 1965, statutory effective date July 4, 1966.) These and other such examples occurred before our Iowa Constitution, Article III, section 26 was adopted. However, the new constitutional amendment is not so worded as to prohibit such legislative action. The effective date of chapter 405, Acts of the 62nd General Assembly, is January 1, 1968.

VI. Plaintiffs' claim Jefferson County is estopped to assert its governmental immunity because it purchased liability insurance and paid premiums from county funds for such insurance. This contention was rejected in McGrath Bldg. Co. v. City of Bettendorf, 248 Iowa 1386, 1392, 85 N.W.2d 616; Stucker v. County of Muscatine, 249 Iowa 485, 494, 87 N.W.

2d 452; Boyer v. Iowa High School Athletic Assn., supra, Anderson v. Calamus Comm. Sch. Dist. (Iowa, 1970) 174 N.W. 2d 643. Whatever may be the persuasive effect of the cases cited by plaintiffs from other jurisdictions the issue is settled in Iowa. Purchase of liability insurance does not constitute a waiver of nor estoppel to raise governmental immunity.

VII. Plaintiffs' plea of estoppel against the insurer-defendant must be rejected on the same grounds. In this case the carrier's liability, if any, is predicated on the liability of the insured. Since the county is not estopped to assert governmental immunity because of premium payments, the carrier is not estopped to assert the same defense because of premium receipts. A general discussion of this problem (in another context) is found in Stucker v. County of Muscatine, supra, loc. cit. 249 Iowa at page 494, 87 N.W.2d at page 458.

VIII. Plaintiffs also assert they are third party beneficiaries under the liability contract. This matter was not argued in the written briefs and no analysis of how the theory could be held to operate in this situation is provided. Our own research uncovers no case with similar facts where recovery has been allowed on this theory. See IV Corbin, Contracts, § 772, et seq., page 1. The trial court concluded recognition of the third party beneficiary contract would be contra to Stucker v. County of Muscatine, supra, and O'Kelley v. Lochner, 259 Iowa 710, 717, 145 N.W.2d 626, 630. We agree. We would add the third party beneficiary theory would also be inconsistent with McGrath Bldg. Co. v. City of Bettendorf, supra, loc. cit. 248 Iowa at page 1393, 85 N. W.2d at page 621, where we approved the following quotation: " 'An indemnity policy is for the purpose of protection against liability and not for the creation or increase of liability.' Cushman v. Grafton County, 97 N.H. 32, [35], 79 A.2d 630, 632."

IX. A rider to the policy in this case provides the carrier will not assert

governmental immunity as a defense unless requested by the County to do so. The County did request assertion of the defense. We are not impressed by the carrier's argument that no consideration is shown for the rider. As a part of a written contract the rider imports its own consideration. There was no showing this was a gratuitous addition to the policy.

However, the record shows the County did, in fact, request the defense of governmental immunity. Under this record the peculiarity of the rider does not change the principle recognized in Division VI.

X. The unfortunate circumstance that the injuries here complained of occurred shortly before the effective date, chapter 405, Acts of the 62nd General Assembly, undoubtedly prevents the parties from asserting a cause they would otherwise now have. But the effective date was consciously chosen by the legislature. The same problem faced plaintiff in Anderson v. Calamus Comm. Sch. Dist., supra, with the same result.

Affirmed.

All Justices concur.